Communications v. Tuschen I may be mispronouncing something The first lawyer to argue is Mr. Charleston Welcome to the 4th Circuit, sir. Good to have you Good morning. Thank you, Judge May it please the Court I am Jonathan Charleston, and I am counsel for the affluent RLM Communications We will present three issues that are at dispute this morning The misappropriation of trade secrets The issue involving the confidentiality agreement And the issue involving the covenant not to compete As a preliminary matter, RLM Communications is a government contractor Primarily in the business of providing cyber defense And information assurance for the Department of Defense And the Department of the Army The company employed Amy Tuschen in a variety of roles Pursuant to an offer letter submitted to her For which she signed The basic issue having to do with misappropriation of trade secrets Starts with the law in North Carolina Which is General Statute 66-152 Which defines a trade secret as being Business or technical information Including but not limited to Formulas, patterns, programs, devices Compilation of information Methods and techniques that derive independent Actual potential commercial information Value from not being generally known And rarely ascertainable Through independent development or reverse engineering And that is the subject of efforts that are not reasonable Under the circumstances to maintain a secret In the particular case at issue The former employee Amy Tuschen Downloaded certain information Prior to her last day of work at RLM Communications This issue is not in dispute As set forth at JA 351 The information that was downloaded Contained information regarding a 500 day strategy A business development manual Proposal development checklist And information related to the current contract That was at issue But this was all downloaded as part of her effort To ensure an efficient turnover Upon her leaving As best I can tell there is no evidence in this record To suggest otherwise Well sure, that's what she said What evidence do you have to suggest otherwise? Well the evidence that we would suggest to you Is that testimony by a defendant That they did not commit the wrongful act Simply creates a factual issue For submission to a jury In this case, this issue was decided On summary judgment Her version is the only version Well no, her The fact of the matter is She contends that And there is no dispute about it That the information on the disc Was confidential proprietary information Of RLM Communications We believe that And she testified There was one disc And she left it there With the gentleman who was taking her job That's what she testifies to But she certainly had the opportunity There was no contradictory testimony To what she said though, right? She had an opportunity Maybe she had an opportunity She certainly Is that a That's enough to create a question of fact then? Is that what you're saying? I think your honor She had access She could be lying You're saying that she could be lying And there might have been two discs And she took one with her And gave one to him That's not what you're saying Well one of the things That's really interesting In this In the era of this information technology Is once you make the download Once the information is downloaded To a disc It can be downloaded Several times over The only thing that RLM knows Is that the information was downloaded once We don't know whether the disc That was downloaded The information was downloaded to Was downloaded And shared further So the one thing that we know That's not in dispute whatsoever Is that the information was downloaded Now the court The district court relied On medical staffing network case And it was distinguished by the court But the one thing that I would point out Is direct evidence The medical staffing case Stands for the proposition That direct evidence Is not necessary To establish a claim For misappropriation of tracing Right, but some evidence is necessary And you were at summary judgment I don't see how the evidence Gets any better for you At a trial Well the point That's a great point, Jack But the point that we would make Is that this court said The district court said That it rejected What was stated in medical staffing It rejected the contention That direct evidence was necessary If there's no direct evidence necessary We'll accept that What's the circumstantial evidence? Circumstantial evidence Is that she had the opportunity She had the opportunity To disseminate She was there She downloaded the information But to get to that It would be what A lot of people would call Maybe What the judges up here might call Conjecture and speculation Rather than evidence Now you've got to say it's evidence Rather than speculation and conjecture You've got to convince us it is, right? Enough to create a question of fact Absolutely, Judge King What we would submit to you Is that the medical staffing case Which stands for the proposition That direct evidence is not necessary Was distinguished Was distinguished by Judge Flanagan on the basis And the only basis that she distinguished That case was that In the Case of RLM Communications It appears that Ms. Tuchin only copied The CD once As opposed to medical staffing The employee At issue Accessed the information Over several periods of time So the only distinction that was made by the court Was that the That Tuchin only Downloaded the file once With respect to the remaining issues One being the Issues around the employment contract The district court contends that Tuchin's employment was not satisfactory Consideration for either the Non-disclosure agreement or the non-compete Agreement on the grounds that The employee relationship existed Prior to Tuchin First being presented with either of those agreements We believe That the court Erroneously relied on the Worth case. We believe the worth case Is control and that's worth Versus Freeman which is the North Carolina Supreme Court. In that case The court stated that the Employer engaged an employee As a salesman On September 1. This is key And that the employment contract Containing the non-compete was Signed by the parties on September 16 1960. Now I contend That I don't quite know what engage Means in the context of this Case because the opinion Doesn't state what engage means At all. Doesn't give any reference But we would have to surmise that Engage means that the person was hired On September 1 And that the non-compete Agreement was entered on September 16. The court found that there Was no written contract with the company not to Compete in existence at the time the relationship Of the employer and employee Was established. What the Court did not find is that The employee had not Began working when Employee was technically Engaged. The court did not Find that the employee Was not working on the 1st Or the 16th. This Case that Relying on by the district court Does not support the district Court's decision. In The case that issued today Amy Tushin was given An offer letter on One day She signed The offer letter on another day And then she started Work On a subsequent day. The Contract that issued specifically said That the effective date of the contract Would be June 14 The offer letter was Signed on June 5 So the question is When was the Person actually hired? We contend That Amy Tushin did not begin work Until June 14. Why is that Significant? Because June 14 Is the day that all of the pre- Employment agreements were signed By Ms. Tushin including among Other things the covenant not to compete And the confidentiality Agreement. We believe That Key to all the cases cited  And that are Determinative is when the relationship Of the employer and the employee Is actually established In all of the cases Cited by the court and all of the cases Cited by Ms. Tushin The employment relationship had already Begun. In other words The employees that started work And then the employment agreement And the confidentiality Agreement and the covenant not to compete Was then presented to the employee at some Period at a later time In the incident case Both the confidentiality agreement And the covenant not to compete Were presented To Ms. Tushin The employee on the day That she presented herself for work Which was on June 14. There was no period Of time that passed But she signed a separate Employment agreement before that right? Well she signed an offer. Nine days before that. She signed an offer that is correct. She accepted employment on June the 5th. Yes she accepted the offer On June the 5th that is correct. And that agreement purported to say That the terms of the Employment agreement were the full Terms considered by the parties So why isn't the non-compete a separate New agreement that requires Separate consideration? Well a couple of things The Given the nature of the work That is done by RLM Communications It's cyber security Everything that they are involved in Involves confidentiality and things of that nature The work that involves the national security On behalf of the government The one thing that I will point out to you And I think this is significant If we go back to the Offer letter. The offer letter says A couple of things. One of those things In particular says that Within the Four points of the offer letter it says The benefit package we are offering includes But is not limited to the following These are things that the company Was given. The use of company Provided facility Company provided equipment And this is most important. Company provided Materials as it directly Supports the contractual Work that's going to be provided Now there were two other issues that I think were Important. The offer letter Says on the subject line that this is Contingent offer. It's contingent on Based on a couple of things. Once It's contingent upon RLM Finally Executing the entire contract with the The second contingency Is that Ms. Tuchin is able to secure And maintain a personnel Security clearance. So at the time That the offer letter Was signed and sent back It clearly Stated that this is a contingent Offer. Contingent on certain things Happening in the future. At the time that the offer letter was signed She was not on the payroll She was not providing any work For the company. All of that happened On June 14th when she presented herself For work and signed all of the documents That She had to sign. She did not have an offer that she Could accept until RLM Obtained the contract with the government Until she passed her background Check. And all of that Occurred sometime At least June 14th or sometime After then. Another case that's important To take a look at that To shed some light on this is the Nike versus McCarthy case. This is the Ninth circuit case. It's a 2004 case. Similar case. An employee Was offered a promotion At one point in time began performing Some limited functions under her new position. That person then At some point later signed a non-compete Agreement. And then At one point. And then her new job Officially began at another point. The ninth circuit Appealed that the employee's advancement Consisted of multiple Elements that played out over a period Of time. And the court upheld The enforcement of the non-compete At that time. So there were Several things happening Along the way. Excuse me. May I ask you a question about the confidentiality Agreement? Yes, Judge. Are you arguing That continued employment would have been Sufficient consideration for that Agreement? What we're arguing Your Honor, is that the confidentiality Agreement, among other things, provides That RLM Communications Was going to provide private information That Tushin would not Otherwise have. Within the body of the confidentiality Agreement, it says, among other things, and I'm going to Read it, it says, while I am Employed by an employer and afterwards I will not use or disclose To any other person or entity Any confidential information Or materials. Now, Your Honor, if you recall The offer letter said That RLM was going To provide company Materials As part of, to support the work that she Was doing. There is adequate Consideration in the fact that the Company stated in the Offer letter that it was going to provide the materials And there's no dispute That certain materials were provided. So that is the consideration you're relying On there, the company private information. And I might also say that In a number of cases There is no restraint Absolutely no restraint To Competition or anything like that In connection with a confidentiality agreement. There's no restraint at all And in many cases in the corporate Practice, non-disclosure Agreements are entered and they simply say that In consideration of The company providing you with information To consider a transaction You agree not to disclose this information. The consideration is that they're Providing you with something. In this Case they provided materials That were in support of the Work that she was doing. There's no dispute That she received those Materials. There's no Restraint with the confidentiality agreement That would make it On the same level as The public policy considerations Against restraint associated With a covenant not to compete. And in fact, one of the issues I would say Is that the court never even went into Any analysis on the Confidentiality Issues because all of The summary judgment on the confidentiality issue Was based on the covenant not to compete. Did you argue them separately below? We did. You did. You said that the Confidentiality agreement should be treated differently It's not a restraint. That's correct. We argue that separately Down below. I'll reserve The remainder of my time. Thank you. You have some rebuttal. Mr. Lord. Good morning. May it please the court. Michael Lord for The defendants. Your honors have touched on What's the nub at this case is that There's suspicion But there are no facts. What we have is the Undisputed fact is that Ms. Tuchin Took some information and burned it to a CD. Undisputed that she did so As the manager of that project. Undisputed she did so So she could transition the work to Her successor. It's also undisputed That there's no evidence that there was A second CD burned. It's also undisputed That none of the information Has been disclosed By Ms. Tuchin for herself Or for the other defendant He signs. What we have is a case of She must have We think she did. But that's Conjecture. It's speculation. And this is the perfect case for summary judgment. Because The plaintiff may have their concerns That's what motivated their lawsuit And as Described by their owner We filed a lawsuit to find out if in fact You're saying you don't need to win on the Lack of consideration Point. Right? You win on the facts? Win on the facts. Because there are so many levels Of defenses to each one of these Claims. It's like Doing a bar exam type of question. But the thing That we keep on coming back to is Where's the evidence? And we Had the opportunity for discovery We've had the opportunity To distill that information We've had the opportunity to put that forward At the summary judgment. She went to work for a competitor, right? I'm sorry? She went to work for a competitor. She did. And that was known At the time That she left. She was congratulated For it. That's a fact. That's a fact. It's a fact and it wasn't an issue until 10 months later. She had a confidentiality Agreement. She signed one and she signed a non-competing Agreement. She went to work for a competitor. Those are facts. They are. And putting those facts Against the law And both of the companies They do Work for the Army? They're federal Contractors so they do provide Service to Not only the Army but I guess The allied services also. What do you mean by allied services? You know If it's the Air Force or the Marines. Military. She did work for the military. Went down there to Fort Bragg And this was in Georgia. This is Fort Gordon In Georgia. But you're located up there At Fayetteville. That's correct. That's where the The plaintiff's Corporate headquarters is there. At Fayetteville. But just Going from the macro view of This is a case of no evidence I can Address the specific Claims But I just wanted to Touch on in the order That was presented so far Was the misappropriation of trade secrets And of course the statute sets the burden And it's substantial evidence Which is not any evidence, it's substantial evidence And the RLM Has conceded that it has no direct evidence That this information Has been They got circumstantial evidence You had the opportunity They identify three circumstances The first one is that They did not specifically authorize Misstution to burn the CD Is that The only time anybody ever did that? Absolutely not. Is that what they said though? Or did they not say that? No, they have one sentence In the deposition testimony Which said we did not authorize her to do that And from that sentence It has gotten so much gloss That it has become An instruction never to do this But the record evidence Is that Daniel Glover Had in Georgia Burned a CD And provided that information To his successor That Misstution Had a legitimate reason To transfer this knowledge To her successor She followed this custom by burning a CD It was open and obvious Everyone at the Georgia operation knew this And never raised a red flag And in fact At JA-166 RLM's corporate representative testified I didn't give it a second thought That she burned a CD So This information was used So it wasn't as if it was A useless document As RLM first stated It was used by the successor And in fact the successor Burned a second CD To give to somebody else So when RLM comes out In its argument and says That this action was unauthorized Unprecedented and essentially useless It's wrong on all three counts Misstution was The director of IA Information Assurance It was within her job duties To manage this contract And part of managing that contract Meant to transfer those duties to her successor I direct the court's attention To Edgewood-Knoll Apartments 80 Southeastern 2nd 653 At 661 North Carolina Supreme Court decision 1954 which states that Employees authority may be judged by looking at the scope Of the duties of the employee So I don't think that's an issue About the statute on burdens of proof Or misappropriation of trade secrets Because I'm so puzzled by this I mean all the statute requires Is a confirmation showing that a person Had a specific opportunity to acquire The trade secret And I don't understand how That statute's supposed to apply in a case like this Where you're talking about an employee Who by definition part of her job Is that she works with trade secrets I mean it's almost like won't they always Have a specific opportunity To acquire that information I don't understand what's going on with this statute I was hoping you could elucidate that for me I think it was Meant to be broad enough to cover Not only the employee aspect But for outside I see how it applies to outsiders but what I don't see Is how you possibly do apply this statute To an employee who works with the trade secrets On a regular basis By definition you're always going to have a prima facie And that can't be right It's strange in that way And it's just not From my experience it isn't contested It's just for purposes of summary judgment We'll go beyond that So everyone just kind of reads that Right out of it and says what you really need Is a prima facie case that they actually Misappropriate The statute builds in this Idea that there's an opportunity And then from that opportunity anything nefarious Could happen So just don't read it literally in a context like this Correct and the facts in the circumstance Of this case is to have Someone who's copied The information for a legitimate reason It was used for legitimate reasons It was part of a custom And they have no evidence Otherwise They had the computer and this is a cyber security company They didn't check To see whether the information Was downloaded to other information They had the CD They didn't do any forensic examination Of the CD They had Mr. Yelberton They didn't even speak to him he was the successor to this All they have is She must have done this And we have They believe that they have a right to go Before a jury and say You shouldn't believe her They get to benefit all the facts In the summary judgment proceeding But they have no The kernel The fact that they have is undisputed Is that she burned the information to a CD And then from there Basically defendants have proved To that competitor And then tried to hire Some of the other employees That she worked with And then they competed with you on another contract She was free to do so And she wasn't doing a hire It was a letter of intent So if the contract left RLM to E-science That the employees would follow the contract And it wasn't an offer of employment It was heavily contingent upon If the contract left Would they be willing to continue working on the contract But putting that aside The institution had the right to do so Because the non-compete Is an afterthought Non-compete Not supported by any consideration And if you get into just the Prohibitions in the non-compete It's unreasonable on its face Let me ask you about that Because that's An issue of some concern To me regarding the enforceability Of this non-compete And in particular I want you to address Exactly how we're supposed to Construe the language of a non-compete Because there are admittedly Some ambiguous terms here The scope of the geographic area Is not defined And so in most contract interpretation cases Where you have an ambiguous term You would look at it To see whether or not you can reconcile it With the rest of the contract And or perhaps hold the ambiguity Against the drafter But it seems to me that in these non-compete cases At least some Opinions of the North Carolina Appellate Courts Seem to suggest that Instead of construing terms narrowly And against the drafter That you construe them broadly In order to contemplate The broadest application And then decide whether that broadest application Is enforceable As against a restraint of trade So what's your view of How the analysis should proceed I think it begins With the fact that It's repeated in every Opinion on a non-compete These agreements are Disfavored and you have a context Of an employer and an employee There's obviously an understanding Here that there's a difference in Negotiation leverage On these things And so you begin with A disfavored status of the agreement And from there the courts Are supposed to read the covenant And read it strictly Against the drafter Who in this case is RLM Well reading it strictly against the drafter in this case Would suggest that we would narrow The scope of the geographic area To make it enforceable Since we don't have a defined territory That's not how you would see Not at all As the drafter of the agreement RLM Had the opportunity to protect its interest It forfeited that opportunity When it used some sort of template Agreement, they can't even tell you Where it came from, how many iterations It was, it was just something that was Put in front of an institution Along with their tax forms and their health forms And it wasn't given a whole lot of thought And so when you have A one-size-fits-all Off-the-shelf type of agreement Why is it that any court Would give any deference to that Or try to make it enforceable And so when you look at the four corners of the document Does it make sense It says in the same Geographical area, same as what Well you say it's not worth The paper it's written on Absolutely Dead on arrival Because no consideration Afterthought, and then when you look at it What's the time One year slash months, what does Particularly that mean, what's the territory It's the same Same as what North Carolina law to it Absolutely Working down there in Georgia That's correct, but it was The choice of law In the contract said North Carolina Which makes sense because it's The plaintiff is a North Carolina corporation And really getting back to Judge Diaz's question Is, shouldn't we try to make this Work, and that kind of bleeds back Into a blue pencil And This is an agreement That cannot be blue penciled because You're not striking out something As required by strict North Carolina Application of that doctrine Rather you're writing in So you would have to write in The same geographic area as we do business Or the same geographic area As the contract asserted Or better yet The same geographic area where this Employee had job responsibilities That would make A covenant that would be Enforceable, and I do want to Highlight for the court The unanimous North Carolina Supreme Court Recently reiterated The strict blue pencil doctrine In a case called Beverage Systems of North Carolina A Westlaw site of 2016 WL1084117 That was decided March 18th of this year So What about the Confidentiality agreement, is it your Position that that stands on kind of the same footing Or separate analysis for that one It's a separate contract So it's not supported by The initial employment They're not disfavored like Non-competing That's interesting because I would say They're favored under the confidentiality agreement They protect a legitimate business Interest, no doubt about that Whether they're favored or not It's still a restriction and it's a question of How far is the restriction RLM would have you believe that simply because Ms. Tuchin worked there for six years Whatever experience she's had Now disqualifies her From ever being employed in The same industry Which takes the confidentiality And makes it a de facto Non-compete agreement But your honor's question Earlier on to counsel for the plaintiff Was whether they Consider continued employment As consideration and the answer was No, and it's important to highlight That fact because Before the district court RLM argued two bases for consideration One was Offer of employment and obviously Two different agreements That need to stand on their own Two feet with separate consideration And the alternative was this Gratuitous proffer of confidential Information. At no point At no point did RLM Argue that continued Employment would satisfy The consideration requirement For a contract Being confidentiality agreement I've judged From the questions That whether Continued employment would be consideration I think that's a very interesting question It wasn't raised below So because it wasn't raised below I believe that this Court shouldn't hear it for the first time Unless there's a meeting of a Fundamental error And there has been no showing that there's been a Fundamental error by Plaintiffs. They're basically Asking to save themselves but I think Counsel has already admitted that they're not Pursuing that thing But just to round Out that idea There's a decision called Round point. It's one word Mortgage company And it's by Judge Gale In the North Carolina Business Court Decided February 18 2016 Westlaw side of 2016 WL 687629 And Judge Gale Says there's An ongoing debate of whether Continued employment would work And Judge Gale came down on the side That no. Continued employment Would not satisfy Would not be adequate consideration To support a confidentiality agreement Military secret? This one Apparently does They said they had a background Working for the military That might be A little bit Stronger way to argue It would Not to make the case The confidentiality agreement Loses One Because it's no consideration Two, it's overly broad because it reaches Too many activities Three, there was no breach RLM's argument before this court Is that the breach is the creation Of the CD That's it. Not sharing the information The breach of this particular agreement Was burning the CD And obviously What are the damages? No damages Because You had what they call a follow on contract Issue, right? Correct. And they got the follow on contract? They did And this was all after summary judgment So they're bringing a case In which there's no Is that the record then? The fact that they won the follow on contract? Yes. It's undisputed Is it properly in the record? Yes, sir And the agreement itself Permits copying In the performance of duties So that's why Again, there's many levels To why the confidentiality Agreement doesn't work for the plaintiffs The easiest one The one that the district court took on Was the consideration issue But if you dive deeper into it There are other multiple reasons As a matter of law By this claim The claim would not survive And to your point Judge King The confidentiality agreement goes by But I hear the concern about military secrets That's why you would have a claim And they've asserted one under the trade secrets act So just because The private contract goes It doesn't leave the plaintiff without a remedy But that's not to say that the plaintiff Has proved its case And the plaintiff hasn't proved its case They've come forward with No evidence It's just the must have, should have She had to have had And she hasn't been able They haven't been able to provide In fact I believe the defendants Have proved a negative We traced that CD Why it was burned How it was burned Where it went to What use was made out of That there has been Two court orders Requiring that The defendants return any information Still in their possession of RLM There was nothing returned simply because There was nothing there The plaintiff in discovery Asked for those documents Nothing was produced because the defendants Didn't have anything The defendants were each questioned During depositions about the documents There was nothing Admitted during the depositions That they had it because they simply don't have this Information but yet this Lawsuit still persists And that the court put An end to this vexatious litigation By way of summary judgment by holding The plaintiff simply to their burden of proof And they didn't satisfy that For the reasons stated Both in brief and oral argument The defendants respectfully request That you affirm the sound decision Of the district court Thank you Thank you very much Mr. Lord Mr. Brewer Good to have you here Good to be here Coy Brewer for the Appellate RLM I want to Deal first With the mispreparation of trade secrets In the North Carolina statute Which we contend establishes The standard for the evaluation Of whether there is sufficient circumstantial Evidence of a mispreparation of Trade secrets North Carolina general statute 16155 Specifically states There has to be substantial evidence Of only two things First That The individual Knows or should have known Of the trade secrets There's no Factual dispute as to that And second There are matters In the alternative Has a specific opportunity To acquire it for disclosure Now in this case we respectfully Contend that the copying of the CD Is a specific Opportunity to acquire The trade secrets For the purpose of disclosure The CD presents An opportunity subsequently For disclosure. One of the reasons why We respectfully contend That it was necessary for Amy Tuchin to make a copy Of the CD before she left If she was attempting To recopy that and take it for Disclosure. If she only made a copy and she Did not have a cover story for it Then RLM Would have known that a copy would have Been made and would have looked Into it. Mr. Brewer how does Having the CD present More of an opportunity For disclosure than Having access to the hard drive on the Computer where that same information Is located? It is the opportunity To have the information For disclosure. That means Subsequent disclosure. Having a CD That you can then copy and Take with you creates an Opportunity for subsequent disclosure But the evidence is that the CD Was transferred to her successor and I guess My question is and this relates To Judge Harris' earlier question By virtue of her employment She had access to this information 24-7 and whether or not It's on a CD, a little zip drive A hard drive I don't see the distinction. She had Access to the information But she Did not have access to the Information for the purpose of This I don't see that. I mean an employee Has access, they can disclose, right? Whether they're employed or After they leave the employment They can disclose. If they could Verbally Disclose or they could use The information but Having access To the information For a convenient And substantial disclosure to a Subsequent Employer is a different Type of opportunity for Disclosure. The mere copying Of the transfer of the information from the Hard drive to the CD in your View was enough to present a Prima facie. It is enough To implicate this statute And the North Carolina legislature Recognizing the covert nature Of misappropriation Of trade secrets If somebody's going to misappropriate trade secrets They're going to do it covertly and they Are going to deny it. Well this wasn't very covert. I mean she Admitted that she copied the CD and did so for the Purpose of the transition. She had to copy the CD And have a Cover story for it Or our RLM would have done An investigation when they realized That one of their CDs had been Copied. What this Statute I'm sorry I just Really struggle with how we can apply This statute in a case like this. How is she If making the CD is enough To satisfy that she had the specific Opportunity to acquire the information For disclosure. I don't see how A person like her would ever hope To rebut that showing because she's not Going to be able to show that she Acquired the information by independent Development reverse engineering Or obtained it from another person With a right to disclose the trade secret This statute just doesn't work in this case If your honor please We believe that this statute When considered in the Context of the medical staffing case And all that was done in medical staffing Was that the individual Before she left Went into the computer And looked at To an unusual degree Confidential information There was a Peculiar act before she left We are contending that this copying of the CD in this case was the same Kind of peculiar act that she had in medical Staffing In that there was No reason, they never Asked her to copy the CD There was a specific prohibition to her Copying the CD and it really had No substantial use How in your view is she supposed to rebut That prima facie case? Is she limited to the three things listed in the statute? She can Deny it and a finder of fact Can subsequently evaluate Her credibility That is an issue for the Finding of fact, what we contend Is that the statute establishes What is a prima facie case Therefore what is the standard for Summary judgment which should be Applied here that that statute With the medical staffing case Brings this To a level that it becomes An issue for a finder of fact And it can be denied and the finder of fact Can evaluate the evidence And make a decision in the case But what we're talking about here is what is a prima facie Case, what is enough to get past Summary judgment and that we contend That based upon the standard Established by the statute and based upon Medical staffing we have that In this case. Thank you Mr. Brewer Thank you very much Appreciate it very much. We'll come down To the Greek council and go on to the next case Thank you very much
judges: Robert B. King, Albert Diaz, Pamela A. Harris